IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BARBARA SOPKIN,

    Plaintiff,

v.     Civil Action No. 1:16-cv-1146

JILL C. MENDELSON, et al.

    Defendants.

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants Jill C. Mendelson, as Executor of the Estate of Richard S. Mendelson ("Mendelson"), Deceased, Richard Mendelson Trust, H. Carter Land, III, and Land Clark Caroll Blair, P.C.'s ("the Mendelson Defendants") Motion to Dismiss the Amended Complaint; Defendant H. Jason Gold's Motion to Dismiss the Amended Complaint; Defendant Madeline Trainor's Motion to Dismiss the Amended Complaint; Defendant John Toothman's Motion to Dismiss the Amended Complaint; and Defendant Anne N. Kathan's Motion to Dismiss the Amended Complaint.

Plaintiff Barbara Sopkin, a citizen of Israel, has filed this suit as assignee of Lucre Investments, Ltd. ("Lucre"). Lucre is the general partner of Interlase Limited Partnership

1

("Interlase"). Interlase was chartered as a Georgia limited partnership in 1996 and was primarily owned by Dr. Kenneth Fox and Dr. Arthur Coster. Dr. Fox was the primary inventor of certain laser technology medical devices, which were patented. Interlase licensed these medical device patents to several companies and received royalties arising out of the patent licenses. Plaintiff, Lucre, Interlase, and the Defendants have been involved in different types of litigation over the past two decades. A brief account of the parties' relevant history follows.

In 1996, Dr. Fox filed a divorce action against his wife in the Arlington County Circuit Court ("the Arlington Court"). The final divorce decree, entered on April 9, 1997, found that various entities, including Interlase, were sham entities fraudulently created by Dr. Fox to illegally hide his assets. In September 1998, Dr. Coster, as general partner of the Coster Family Limited Partnership, which held a 49% limited partnership interest in Interlase, filed a petition in the Arlington Court to have a Special Receiver appointed to take control of Interlase's assets.

In mid-September 1998, the Arlington Court appointed Richard Mendelson as Special Receiver and ordered that Mendelson would be paid a reasonable fee for his services and recover costs incurred in the receivership ("the Arlington receivership

2

case"). In December 1998, the Arlington Court directed Lucre, its officers, managers, and directors to deliver to Mendelson all Interlase assets within their possession.

Mendelson retained three attorneys to represent him during his time as Special Receiver: Defendants John Toothman, Madeline Trainor, and Anne Kathan ("the Attorney Defendants"). The Attorney Defendants acted as Mendelson's counsel of record at different stages of the Arlington receivership case and—as explained below—in bankruptcy proceedings in the United States Bankruptcy Court. All of the fees and expenses incurred by the Attorney Defendants in connection with their representation of Mendelson were approved by the appropriate court.

In July 1999—while the Arlington receivership case was still ongoing—Lucre, as purported general partner of Interlase, filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the North District of Georgia, placing Interlase into Chapter 7 bankruptcy ("the Interlase bankruptcy case"). In October 1999, the Interlase bankruptcy case was transferred to the United States Bankruptcy Court for the Eastern District of Virginia ("the Bankruptcy Court"). Defendant H. Jason Gold was appointed Chapter 7 Trustee of Interlase's bankruptcy. In November 1999, the Bankruptcy Court entered an order suspending

the bankruptcy proceedings and deferring to the Arlington receivership case.

In February 2000, pursuant to an order by the Arlington County Circuit Court, Mendelson filed a summary of claims against Interlase's assets in the Arlington Court. Mendelson's summary of claims was filed after notice had been given to all known persons who had a substantial interest in Interlase. On March 20, 2000, the Arlington Court entered a final disbursement order approving Mendelson's report and providing that all claims to the assets of Interlase were rendered null and void, except for claims filed in Mendelson's report. Plaintiff did not file any claims with Mendelson.

Throughout the Arlington receivership case, Mendelson filed reports with the Arlington County Circuit Court, informing the Court of his actions as Special Receiver, and he sought approval for disbursement of fees and expenses. The Arlington Court entered numerous orders approving Mendelson's fees and expenses. Mendelson acted as Special Receiver until the Arlington receivership case was closed in June 2009.

On July 16, 2008, Plaintiff filed a Motion to Reinstate the bankruptcy proceedings in the Bankruptcy Court. Plaintiff argued that during the course of the receivership, Mendelson failed to increase the value of Interlase's assets by not renegotiating Interlase's licensing agreements and by not

4

identifying additional licensing opportunities. Plaintiff also complained of not having received distributions made from the Special Receiver's collections of Interlase's assets. Defendant Gold, as Chapter 7 Trustee, filed an answer to Plaintiff's motion in August 2008, in which he stated that Plaintiff's allegations were unfounded and without merit. The Bankruptcy Court entered an order denying Plaintiff's Motion to Reinstate on October 6, 2008.

In April 2009, the Bankruptcy Court vacated the Receivership, and determined that the assets of the estate should be vested in Gold, the Chapter 7 Trustee. The Bankruptcy Court reinstated the bankruptcy case and ordered that all further administration of Interlase's assets was to be conducted in the Bankruptcy Court. In August 2009, the Bankruptcy Court held an auction in open court for the sale of Interlase's assets. Plaintiff attended the auction and made bids. Interlase's assets were ultimately sold to Spectranetics for $105,000, and the Bankruptcy Court approved the sale. Plaintiff, who did not appeal the Bankruptcy Court's order approving the auction sale, claims that the fair market value of these assets was $10 million.

On March 3, 2010, Mendelson filed an application for compensation with the Bankruptcy Court, seeking the Court's approval for his final compensation. Plaintiff opposed

5

Mendelson's request. The Bankruptcy Court approved Mendelson's fees on July 16, 2010.

On March 16, 2010, Gold moved the Bankruptcy Court to adopt the Arlington County Circuit Court's March 20, 2000 Order approving Mendelson's summary of claims. Plaintiff filed an opposition to Gold's motion. The Bankruptcy Court granted Gold's motion to adopt the receivership order on September 25, 2010. Plaintiff did not appeal this order.

On May 20, 2011, Gold filed his Final Report in the Bankruptcy Court, which detailed the assets of Interlase's estate and described how those assets should be distributed according to law. The Bankruptcy Court approved Gold's Final Report on June 21, 2011. On August 31, 2011, Gold filed his Final Account and Distribution Report and Application to be Discharged ("Final Account"). The Bankruptcy Court closed the Interlase bankruptcy case and discharged Gold as Trustee via a closing order entered September 6, 2011. Richard Mendelson died in May 2016.

Plaintiff filed her complaint in this Court on September 8, 2016. She amended her complaint on January 31, 2017. In her Amended Complaint, Plaintiff raises the following causes of action: violations of the Virginia Business Civil Conspiracy Act, VA. CODE ANN. § 18.2-499 *et seq.*, against all Defendants (Count 1); legal malpractice against Defendants John Toothman,

6

Madeline Trainor, and Anne Kathan (Count 2); Individual Liability of Richard Mendelson for breach of fiduciary duty under the common law and in violation of Virginia Code section 8.01-597 (Count 3); Individual Liability of Defendant Jason Gold for breach of fiduciary duty and negligence (Count 4); wrongful interference with contract against all Defendants (Count 5); and violations of 42 U.S.C. § 1983 against all Defendants (Count 6). All the Defendants have moved to dismiss the Amended Complaint. On March 24, 2017, this Court heard oral argument on the Defendants' motions, and this matter is now ripe for disposition. Because Plaintiff fails to state a claim upon which relief can be granted, all claims against the Defendants must be dismissed.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted). Complaints are required to allege "a

7

*plausible* claim for relief" instead of merely stating facts that leave open "the *possibility* that a plaintiff might later establish some set of undisclosed facts to support recovery." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 587 (4th Cir. 2015) (emphasis in original).

In Count 1 of the Amended Complaint, Plaintiff asserts a claim against each Defendant under the Virginia Business Conspiracy Act, VA. CODE ANN. § 18.2-499 *et seq.* ("the Business Conspiracy Statute"). Section 18.2-499 imposes criminal liability upon "[a]ny two or more persons who shall combine, associate, agree, mutually undertake or concert together for the purpose of willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatsoever." Section 18.2-500 imposes civil liability for such conduct. See VA. CODE ANN. § 18.2-500.

To state a claim under the Business Conspiracy Statute, a plaintiff must sufficiently allege that there was: (1) a combination of two or more persons; (2) for the purpose of willfully and maliciously injuring the plaintiff in reputation, trade, business or profession; (3) resulting in damage to the plaintiff. Dunlap v. Cottman Transmission Sys., LLC, 754 S.E.2d 313, 317 (Va. 2014); see also Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co., 108 F.3d 522, 526 (4th Cir. 1997). An allegation of conspiracy must at least

8

allege an unlawful act or an unlawful purpose, since there can be no conspiracy to do an act that the law allows. Dunlap, 754 S.E.2d at 317 (citation omitted); Hechler Chevrolet, Inc. v. Gen. Motors Corp., 337 S.E.2d 744, 748 (Va. 1985); see also Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003) ("[T]o survive a motion to dismiss, an allegation of conspiracy must include either an unlawful act or an unlawful purpose.").

Plaintiff fails to allege any unlawful act or unlawful purpose, and thus, she cannot plead the elements of a conspiracy claim. Plaintiff asserts that Mendelson "collaborated closely" with Gold and with his counsel—Toothman, Trainor, and Kathan—in filing joint reports in the Arlington receivership case in state court and in the bankruptcy proceedings in the Bankruptcy Court. She further alleges that Gold "agreed" with Mendelson to submit to the Bankruptcy Court quarterly reports in violation of the Conspiracy Statute. Finally, Plaintiff claims that the Defendants collaborated to submit fee applications for their compensation.

As the records in each court proceeding indicate, the Arlington County Circuit Court and the Bankruptcy Court required that Mendelson and Gold submit their reports and fee applications. In fact, the courts adopted the reports filed by Mendelson and Gold, sometimes over the Plaintiff's objections,

9

and they approved the fee applications. Complying with court requirements does not constitute an unlawful act, and Plaintiff offers no factual support showing that the Defendants acted with an unlawful purpose in complying with court orders.

Moreover, the Business Conspiracy Statute simply does not apply to this case. Plaintiff's claims do not revolve around the operation of a business. Rather, her claims arise out of the lawful, court-mandated acts taken by Defendants in the course of a court managed receivership and bankruptcy proceedings. The Conspiracy Statute applies to neither of these situations. As a result, Plaintiff fails to state a claim in Count 1 of her Amended Complaint.

In Count 2 of the Amended Complaint, Plaintiff asserts a claim against Defendants Toothman, Trainor, and Kathan ("the Attorney Defendants") for committing legal malpractice. A cause of action for legal malpractice requires: (1) the existence of an attorney-client relationship which gives rise to a duty; (2) breach of that duty by the defendant attorney; and (3) that the damages claimed by the plaintiff client have been proximately caused by the defendant attorney's breach. Cox v. Geary, 624 S.E.2d 16, 22 (Va. 2006). An action for the negligence of an attorney in the performance of professional services, while sounding in tort, is an action for breach of contract. Id.

Thus, the contract formed between an attorney and a client is what gives rise to the attorney-client relationship. Id.

Here, Plaintiff alleges no factual support showing the existence of an attorney-client relationship between Plaintiff and the Attorney Defendants, or between the Attorney Defendants and Lucre or Interlase. Plaintiff does not allege that there was a representation agreement between her and these defendants, and thus there is no contract that can form the basis of an attorney-client relationship between Plaintiff and the Attorney Defendants. Defendants Toothman, Trainor, and Kathan served as counsel to Mendelson, as Special Receiver, in the Arlington receivership case and in the Interlase bankruptcy case. As counsel to the Special Receiver, the Attorney Defendants owed a duty to Richard Mendelson. A contract between the Attorney Defendants and Mendelson did not create an attorney-client relationship between the Attorney Defendants and Plaintiff. Because of this, the Attorney Defendants did not owe a duty to Plaintiff, and Plaintiff cannot assert a legal malpractice claim against Defendants Toothman, Trainor, and Kathan. As a result, Plaintiff fails to state a claim in Count 2 of her Amended Complaint.

In Count 3 of the Amended Complaint, Plaintiff asserts a claim against the Mendelson Defendants for "individual liability," and in Count 4, Plaintiff asserts a claim against

Defendant Gold for "individual liability." Plaintiff contends that Mendelson committed intentional and negligent actions in violation of Virginia Code section 8.01-597 and the common law for fiduciaries, and that Gold acted negligently and breached the standard of care and fiduciary duty of a Chapter 7 Trustee.

Plaintiff's claims in Counts 3 and 4 are time barred. An action for breach of fiduciary duty is subject to a two-year statute of limitations. VA. CODE ANN. § 8.01-248; Informatics Applications Group, Inc. v. Shkolnikov, 836 F. Supp. 2d 400, 424 (E.D. Va. 2011); see also Goldstein v. Malcolm G. Fries & Assoc., Inc., 72 F. Supp. 2d 620, 625 (E.D. Va. 1999) ("Claims for breach of fiduciary duty are governed by Virginia's catch-all statute of limitations[.]"). The two-year limitations period runs from the date of the alleged breach, and it is not extended by the discovery rule. Jones v. Shooshan, 855 F. Supp. 2d 594, 603 (E.D. Va. 2012) ("Virginia courts have repudiated the discovery rule for breach of fiduciary duty claims, and the majority of the federal courts in Virginia have followed suit.").

Mendelson acted as Special Receiver until the Arlington receivership case was closed in June 2009. The Bankruptcy Court approved Mendelson's final fee application on July 16, 2010. Thus, any claim against Richard Mendelson and the Mendelson Defendants expired, at the latest, in July 2012. Plaintiff

12

argues that Virginia Code section 8.01-229(B)(2) tolls the statute of limitations because Mendelson died before the statute of limitations expired. However, Section 8.01-229(B)(2) does not apply, because the statute of limitations had already expired before Mendelson's death. Gold's last substantive act as Chapter 7 Trustee was to file his Final Account on August 31, 2011. Thus, any claim against Gold expired, at the latest, in August 2013.

In the Amended Complaint, Plaintiff makes several flawed arguments concerning the statute of limitations. First, Plaintiff states that her claims are subject to the five-year statute of limitations for property damage under section 8.01-243(B) of the Virginia Code. She argues that the damages she claims against the Defendants are based on Interlase's intellectual property rights under U.S. patent laws. However, this case does not revolve around property rights. Plaintiff has not brought an action over the Interlase patents themselves. Rather, Plaintiff's suit revolves around the actions of the Defendants in the course of the Arlington receivership case and the Interlase bankruptcy case in the Bankruptcy Court. As a result, Plaintiff's claims are not subject to a five-year statute of limitations.

Second, Plaintiff contends that the statute of limitations for property damage is subject to a discovery rule—meaning that

the statute of limitations does not begin to run until plaintiffs discover, or reasonably should have discovered, all the elements of their claim. See Nat. Res. Def. Council v. U.S. E.P.A., 806 F. Supp. 1263, 1277 n.14 (E.D. Va. 1992). Thus, Plaintiff argues, the statute of limitations for her claims did not begin to run until July 31, 2015, which is when Plaintiff states she was put on notice that Mendelson and Gold had breached the standard of care and their fiduciary duties. However, Plaintiff's arguments fail. Even if Plaintiff's claims were subject to the five-year statute of limitations for property damage (which, as explained above, they are not), a cause of action for damage to property accrues on the date the injury is sustained, not when the resulting damage is discovered. See VA. CODE ANN. § 8.01-230. Thus, Plaintiff's discovery rule argument is incorrect.

Furthermore, Plaintiff knew that she had a potential cause of action against Mendelson and Gold years before July 31, 2015—at the latest, in August 2008. In July 2008, Plaintiff complained to the Bankruptcy Court that Mendelson was not properly managing Interlase's assets in her Motion to Reinstate the bankruptcy proceedings. In August 2008, Gold submitted a response to the Bankruptcy Court, stating that an initial review showed that Plaintiff's complaints and allegations lacked merit and were an attempt to circumvent certain rulings made during

the Arlington receivership case. It was at this point—in August 2008—that Plaintiff knew of her claims against Mendelson and knew that Gold would not pursue an action against Mendelson. As a result, Plaintiff cannot now claim that she only discovered her claims against Mendelson and Gold in July 2015.

Finally, as an alternative to her discovery rule theory, Plaintiff argues that she was unable to assert any cause of action on behalf of Interlase until September 30, 2011. Plaintiff arrives at this date by relying on Bankruptcy Rule 5009, which she claims set a thirty-day period for making objections to Gold's Final Account, filed August 31, 2011. Defendants, on the other hand, urge the Court to find that Bankruptcy Rule 5009 does not extend the statute of limitations, and that the latest date on which the statute of limitations began to run was September 6, 2011—the date on which the Bankruptcy Court entered an order closing the Interlase bankruptcy case.

Regardless of whether the statute of limitations began to run on August 31, September 6, or September 30, 2011, a two-year statute of limitations applies to Plaintiff's claims. Thus, Plaintiff's September 8, 2016 complaint—filed well over two years from all of those dates—is untimely, and the Court need not rule on the effect of Bankruptcy Rule 5009. Because Plaintiff's claims against Mendelson and Gold are barred by the

15

statute of limitations, Plaintiff fails to state a claim in Counts 3 and 4 of her Amended Complaint.

In Count 5 of the Amended Complaint, Plaintiff asserts a claim of wrongful interference with contract against all Defendants. Under Virginia law, the elements required for a prima facie case of tortious interference with contract are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. DuretteBradshaw, P.C. v. MRC Consulting, L.C., 670 S.E. 2d 704, 706 (Va. 2009) (citing Chaves v. Johnson, 335 S.E. 2d 97, 102 (Va. 1985)).

Plaintiff does not allege the elements of tortious interference with contract. In the Amended Complaint, Plaintiff alleges that Interlase had valid patent licensing contracts with licensees, and that the Defendants interfered with and disrupted these contracts by not collecting adequate royalties from, and entering inadequate and unfavorable settlements with, contract patent licensees of Interlase. Plaintiff does not identify a contract that any of the Defendants wrongfully interfered with. Rather, Plaintiff asserts that the Defendants failed to reject disadvantageous contracts and an unfavorable settlement

16

contract. In other words, Plaintiff complains that the Defendants failed to interfere with contracts, not that they wrongfully interfered with contracts. As a result, Plaintiff fails to state a claim in Count 5 of the Amended Complaint.

In Count 6 of the Amended Complaint, Plaintiff asserts a claim under 42 U.S.C. § 1983 against the Mendelson Defendants, Toothman, Trainor, and Kathan. Plaintiff alleges that these Defendants are liable to her for acting under color of state law and interfering with and depriving her of property rights under the Interlase patents. Plaintiff's claim is barred by the statute of limitations. There is no federal statute of limitations for § 1983 claims, so the state limitations period which governs personal injury action is applied. See Wilson v. Garcia, 471 U.S. 261, 280 (1985), *superseded in part by statute as stated in* Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). Virginia has a two-year statute of limitations for personal injury claims. VA. CODE ANN. § 8.01-243(A).

Although the applicable state statute of limitations supplies the length of the limitations period in a § 1983 action, the time of accrual of the cause of action is a matter of federal law. Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues when the plaintiff has sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of

action. Id.; see also Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 320 (4th Cir. 2006).

As explained above, Plaintiff knew that she had a potential cause of action against the Defendants by August 2008. Plaintiff complained to the Bankruptcy Court that Mendelson was not properly managing Interlase's assets in July 2008. Plaintiff learned that Gold would not pursue an action against Mendelson in August 2008, when Gold responded to Plaintiff's allegations. Plaintiff filed her complaint in this court in September 2016—well beyond two years from August 2008. Even if Plaintiff could not have filed a complaint until the closing of the Bankruptcy proceedings, the Bankruptcy case was closed in September 2011. Plaintiff's complaint was filed well beyond two years from September 2011. Thus, Plaintiff's § 1983 claim is untimely. As a result, Plaintiff fails to state a claim in Count 6 of the Amended Complaint.

For the foregoing reasons, Plaintiff's Amended Complaint fails to state a claim on which relief can be granted. Thus, all claims against the Defendants must be dismissed. An appropriate order shall issue.

_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 27, 2017